UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY R. JACKSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. ED CV 09-677-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he failed to: 1) consider a treating psychiatrist's diagnosis of bipolar disorder; 2) discuss a medication progress note reporting that Plaintiff was "suicidal" and had auditory hallucinations; 3) find that Plaintiff's mental impairment was severe; and 4) properly consider lay witness testimony. (Joint Stip. at 3-4, 7-8, 9-10, 11-13.) Because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for SSI on October 23, 2006, alleging that she had been unable to work since August 15, 2006 because of asthma, a birth defect in her left arm, hepatitis C, high blood pressure, and back pain. (Administrative Record ("AR") 53, 134.) The Agency denied the application initially and on reconsideration. (AR 41, 42, 53-63.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 64-66.) Plaintiff appeared with counsel and testified at the hearing on September 19, 2008. (AR 5-40.) On November 24, 2008, the ALJ issued a decision denying benefits. (AR 43-52.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-4.) Plaintiff then commenced the instant action.

## III. DISCUSSION

1. <u>The ALJ Properly Accounted For Dr. Adeyamo's December 22, 2005 Progress Note</u>

In her first claim of error, Plaintiff contends that the ALJ erred by failing to consider her treating psychiatrist's December 22, 2005 "opinion," set forth in a progress note. (Joint Stip. at 3-4.) In that note, Dr. Oluwafemi Adeyamo diagnosed Plaintiff with "(1) methamphetamine dependence in early full remission; (2) major depressive [disorder] recurrent, moderate severity (by history) with psychotic features; and (3) [rule out] bipolar disorder with psychotic features." (AR 207.) Dr. Adeyamo also noted "Cluster B traits (antisocial personality & borderline personality traits)." (AR 207.)

Dr. Adeyamo rated Plaintiff's Global Assessment of Functioning ("GAF") at 60.[1]  (AR 207.)

Plaintiff argues that the ALJ failed to mention this opinion in his decision and contends that this means that the ALJ must have rejected it, without providing legally sufficient reasons for doing so.  (Joint Stip. at 3-4.)  For the following reasons, the Court disagrees.

In his decision, the ALJ found that Plaintiff's mental impairment did not meet or equal Listings 12.04 or 12.09.  (AR 48.)  He referenced Dr. Adeyamo's December 22, 2005 note, pointing out that Plaintiff had been receiving psychiatric treatment for depression since 2005 and had a history of polysubstance abuse in long-term, sustained remission.  Indeed, the ALJ specifically noted that the GAF score of 60 assessed by Dr. Adeyamo indicated a "marginally moderate degree of limitation."  (AR 48.)

Nevertheless, the ALJ found that Plaintiff's psychiatric treatment had been "routine with no indication of any significant changes."  (AR 48.)  Additionally, he noted Plaintiff's testimony that her medication helped with auditory hallucinations and that she did not think her mental impairment kept her from working.  (AR 49-50.)  The ALJ agreed with the state agency reviewing psychiatrists, who opined that Plaintiff had a mild to moderate depressive disorder that would moderately limit her ability to carry out detailed instructions and to maintain attention and concentration for extended periods.  (AR

---

[1] *See Diagnostic and Statistical Manual of Mental Disorders-IV-TR* at 34 (describing a person with a GAF between 51 and 60 as someone with moderate symptoms or moderate difficulty in social, occupational, or school functioning).

1   48, 228, 230, 233.)  Consequently, the ALJ found that Plaintiff's
2   mental impairment would limit her to simple, repetitive tasks, but
3   that it would not prevent her from working.  (AR 49, 51.)
4        The Court rejects Plaintiff's argument that the ALJ's failure to
5   expressly discuss Dr. Adeyamo's diagnosis of "bipolar disorder with
6   psychotic features; cluster B traits (Antisocial Personality) and
7   Borderline Personality Traits" was reversible error.  (Joint Stip. at
8   6-7.)  Though, in general, the opinion of a treating doctor is
9   entitled to deference over the opinions of non-treating doctors, *Orn*
10  *v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007), the ALJ was not required
11  to expressly accept or reject Dr. Adeyamo's notation "rule out bipolar
12  disorder" because that notation, by itself, was not a finding that she
13  suffered from bipolar disorder.  Instead, it was a plan to explore the
14  possibility of whether she did.  *See*, *e.g.*, *Simpson v. Comm'r, Soc.*
15  *Sec. Admin.*, 2001 WL 213762, at *7-8 (D. Or. Feb. 8, 2001) (rejecting
16  argument that "rule-out" diagnosis is equivalent to provisional or
17  presumptive diagnosis, and holding that there was "no error in failing
18  to find a severe impairment on the basis of" such rule-out diagnoses);
19  *see also Langford v. Astrue*, 2008 WL 2073951, at *3 n.5 (E.D. Cal. May
20  14, 2008) ("Rule-out diagnoses merely indicate that additional testing
21  or observation are required in order to establish the true
22  diagnosis.").  Thus, because neither Dr. Adeyamo or any other doctor
23  diagnosed Plaintiff with bipolar disorder, the ALJ was not required to
24  explain why he was not deferring to Dr. Adeyamo or why he was not
25  finding that Plaintiff had bipolar disorder.  *See Meanel v. Apfel*, 172
26  F.3d 1111, 1113-14 (9th Cir. 1999) (holding that ALJ need not provide
27  "clear and convincing reasons" where no conflict exists between
28  treating doctor's opinion and ALJ's decision).

1    Nor was the ALJ obligated to address every line of Dr. Adeyamo's
2 progress notes.  The record establishes that the ALJ considered all of
3 the evidence in this case, the evidence that supported his decision
4 and the evidence that did not support his decision, and, therefore,
5 any failure by the ALJ to address the December 2005 note in more
6 detail does not require remand or reversal.  *See Howard ex rel. Wolff*
7 *v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding that ALJ's
8 failure to discuss particular medical report was not error where the
9 record showed the ALJ did not "selectively analyze the evidence.").

10   2.   <u>The ALJ Did Not Err In Failing to Discuss An August 2007</u>
11        <u>Psychiatric Progress Note</u>

12    In her second claim of error, Plaintiff contends that the ALJ
13 erred in failing to discuss an August 14, 2007 progress note.  (Joint
14 Stip. at 7-8.)  She claims that, in the note, a treating psychiatrist
15 reported that Plaintiff was "suicidal, that her appearance was
16 disheveled, that her mood was angry, that her affect was labile, that
17 her speech was minimal, and that she had auditory hallucinations."
18 (Joint Stip. at 7.)  She argues that the ALJ's failure to provide
19 reasons for "rejecting" this treating opinion is reversible error.
20 (Joint Stip. at 7-8.)  For the following reasons, the Court disagrees.
21    As an initial matter, the Court finds that the progress note that
22 Plaintiff is referring to does not show that her doctor thought that
23 she was suicidal.  This form contains various boxes for the evaluator
24 to check.  (AR 324.)  One box, labeled "suicidal," is contained in a
25 section entitled "Current Harm Assessment," and asks the evaluator to
26 choose among various types of risks posed by the patient (i.e.,
27 "suicidal, homicidal, self-mutilation, or grave disability").  (AR
28 324.)  The evaluator checked the box marked "suicidal."  (AR 324.)

Immediately beneath that box, the evaluator is then asked to assess the current risk (i.e., "none, ideation but no plan, plan/intent, or other"). There, the evaluator checked the box "none," indicating that, at the time of the evaluation, the doctor believed that Plaintiff posed no risk of suicide. (AR 324.)

Furthermore, contrary to Plaintiff's argument, the ALJ's decision shows that he considered this note. (*See* AR 48, referencing exhibit "15F," containing the note in question.) He was not required to separately discuss this entry, so long as he did not selectively parse the record and discuss only those findings that supported his conclusion that Plaintiff was not disabled. *Wolff*, 341 F.3d at 1012. As discussed below, ultimately, this note was consistent with the ALJ's decision that Plaintiff's psychiatric impairment did not prevent her from working.

The ALJ found that Plaintiff's treatment had been "routine with no indication of any significant changes." (AR 48.) He also noted Plaintiff's September 2008 testimony that her medication helped her with the "voices." (AR 28-29, 49-50.) To the extent that the August 2007 note reflected more severe symptoms, it is noteworthy that the treating psychiatrist reported in the note that Plaintiff's adherence to medication at that time was "poor," and that her medication response was "irregular," implying that her symptoms persisted because she failed to take her medications as prescribed. (AR 324.) The psychiatrist did not change her prescription, only the dosage. (AR 324.)

Further, even assuming that the ALJ erred by not discussing these findings, the Court concludes that any error was harmless. Even if Plaintiff's condition was worse in August 2007, when viewed as a

whole, the medical record shows that her condition was stable in February 2007, and again in January through June 2008, suggesting that Plaintiff's August 2007 symptoms were temporary, perhaps the product of her failure to take her medication.  (AR 261, 305, 311, 319, 321.)  Because the August 2007 findings did not demonstrate that Plaintiff's condition had lasted, or would be expected to last, for a continuous period of at least 12 months, *see* 42 U.S.C. § 423(d)(1)(A), any failure to discuss them did not prejudice her.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that error is harmless if it is inconsequential to the ultimate nondisability determination).  Thus, this claim does not warrant reversal or remand.

    3.    <u>The ALJ Did Not Err At Step Two</u>

In her third claim of error, Plaintiff contends that Dr. Adeyamo's December 2005 diagnosis of bipolar disorder, and the treating psychiatrist's August 2007 findings, demonstrate that the ALJ erred by not finding her mental impairment to be severe at step two of the sequential disability analysis.  (Joint Stip. at 9-10.)  This claim is rejected.

The Court notes that the ALJ did, in fact, determine that Plaintiff's depressive disorder and her history of drug abuse in remission were severe impairments, at least in combination with her other medically determinable impairments.  (AR 47.)  For the reasons already given above, the record did not support a finding that Plaintiff suffered from bipolar disorder.  And the ALJ properly relied on the uncontradicted opinions of the state agency reviewing psychiatrists to find that these impairments did not meet or equal a Listing.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)

7

(opinions of non-treating physicians may constitute substantial evidence where they are consistent with record).

Moreover, because the ALJ properly considered the limitations imposed by these impairments in making his residual functional capacity determination, (AR 48-50), any failure to find that they were severe at step two was harmless error. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that error in finding an impairment non-severe at step two was harmless when ALJ accounted for resulting limitations later in sequential evaluation process) (citing *Stout*, 454 F.3d at 1054-55). Thus, this claim does not merit remand or reversal.

4. <u>The ALJ Did Not Err In Discussing The Lay Witness Testimony</u>

In her fourth claim of error, Plaintiff contends that the ALJ erred in failing to provide a legitimate reason for rejecting the written "testimony" of her daughter, Tammy Jackson. (Joint Stip. at 11-13.) Plaintiff argues that the ALJ "merely summarized" parts of her daughter's statements, but erred in not discussing the daughter's statements regarding Plaintiff's mental impairments. (Joint Stip. at 12.) This claim has no merit.[2]

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout*, 454 F.3d at 1053; *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. § 416.913(d)(4). Nevertheless, an ALJ need only give reasons that are "germane" to the testimony in order to reject it. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the ALJ did so.

---

[2] For some reason, Plaintiff refers to Tammy Jackson as her mother in her brief. (Joint Stip. at 11.) The record shows that Tammy is her daughter. (AR 141, 148.)

1    Plaintiff's daughter filled out a form in November 2006 in
2 support of Plaintiff's application.  (AR 141-48.)  She reported
3 therein that Plaintiff needed help dressing and bathing at times and
4 needed to be reminded to take her medication.  (AR 142-43.)  She found
5 that Plaintiff could not follow written instructions or handle stress
6 well.  (AR 146, 147.)  Nevertheless, the daughter reported that
7 Plaintiff was able to dress and bathe the "children," (presumably, her
8 grandchildren, see AR 10-11), go out on her own, pay bills, and handle
9 her bank account and checkbook.  (AR 144.)

10   The ALJ concluded that Plaintiff's daughter's statement was
11 "coauthored" by Plaintiff.  (AR 50.)  He noted that the daughter
12 mentioned Plaintiff's need to take medication for her mental
13 impairment, as well as certain limitations arising from Plaintiff's
14 shoulder impairment.  (AR 50.)  The ALJ pointed out, however, that the
15 daughter's report nevertheless showed that Plaintiff was able to
16 function independently in large measure.  (AR 50.)

17   Because the ALJ evidently accepted the daughter's report with
18 respect to Plaintiff's mental limitations, given that the report did
19 not suggest any greater limitations than were established by the
20 medical evidence, Plaintiff's claim that the ALJ failed to offer a
21 reason for discounting that portion of the report is rejected.

22   As to the daughter's claims regarding Plaintiff's alleged
23 physical limitations, the ALJ found that these limitations were not
24 supported by the medical record.  (AR 50.)  This is germane to the
25 testimony and is supported by the record.  Therefore, it is affirmed.
26 See Bayliss, 427 F.3d at 1218 (affirming ALJ's rejection of lay
27 witness testimony because it was inconsistent with medical evidence).
28 This claim, too, thus does not warrant remand or reversal.

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: April 28, 2010

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JACKSON\Memo_Opinion.wpd